STATE OF CONNECTICUT *v.* VASKA ANDERSON
(AC 17456)

Schaller, Hennessy and Dupont, Js.

Argued April 20—officially released September 28, 1999

*Wesley S. Spears,* for the appellant (defendant).

*Nancy L. Chupak,* deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Carl E. Taylor,* senior assistant state's attorney, for the appellee (state).

DUPONT, J. The defendant, Vaska Anderson, appeals from the judgment rendered on a jury verdict finding him guilty of possession of more than one kilogram of marijuana with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), conspiracy to distribute more than one kilogram of marijuana by a person who is not drug-dependent in violation of General Statutes §§ 53a-48 (a) and 21a-278 (b), and possession of more than one kilogram of marijuana with intent to sell within 1500 feet of a school in violation of General Statutes § 21a-278a (b).[1]

On appeal, the defendant claims that he was denied a fair trial by an impartial jury because the trial court improperly denied his motion for a mistrial due to juror misconduct that occurred during the presentation of evidence. He also claims that the trial court improperly (1) failed to give a curative instruction concerning the juror misconduct, (2) denied the defendant's motion for a mistrial when the jury indicated it was deadlocked and (3) instructed the jury concerning proof beyond a reasonable doubt. We conclude that the defendant's motion for a mistrial due to juror misconduct should have been granted and, therefore, do not reach the other issues.

The record reflects the following relevant facts. On August 14, 1993, a Connecticut state police detective received notice from the Drug Enforcement Administration in Los Angeles, California, that a black woman in white clothing named Brenda McCoy, suspected of

---

[1] The defendant was charged with two other crimes, assault of a peace officer in violation of General Statutes § 53a-167c (a) and failure to appear in the first degree in violation of General Statutes § 53a-172 (a). He was found not guilty as to those changes. The defendant was sentenced to a total effective sentence of fourteen years.

carrying narcotics, would be arriving at Bradley International Airport on TWA flight 290 at 8:30 p.m. that evening. Officers detained a woman at the airport fitting this description after a narcotics-detecting canine indicated that her suitcases contained narcotics. Her identification revealed that she was Brenda McCoy, and upon searching her suitcases, the officers found inside each a large bundle wrapped in cellophane and sheets covered with a blanket. The bundles weighed a total of 18.48 kilograms or 40.75 pounds and tested positive for marijuana. The officers placed McCoy under arrest.

McCoy told the police that she was instructed to call a beeper number when she had the suitcases, and that a person would pick up the suitcases and give her $1500. McCoy called the beeper number and arranged the pickup. The police in unmarked cars watched while a Pontiac Grand Am with a woman in the driver's seat and a male, later identified as the defendant, seated next to her, parked in front of McCoy's apartment building. The defendant exited the vehicle and, after meeting McCoy at the front entrance, followed her to her apartment. As the defendant exited the building with the suitcases, the police ordered him to stop. The defendant, instead, dropped the suitcases and ran out of the building. While outside, he shouted to the woman in the car that they had been set up by the police. The defendant and the woman were apprehended and placed under arrest.

The defendant claims that he was denied a fair trial by an impartial jury because the trial court improperly denied his motion for a mistrial due to juror misconduct during the presentation of evidence. We agree with the defendant.

The following additional facts are relevant to this claim. The trial was conducted in front of six jurors and three alternate jurors. After the conclusion of the

third day of trial, the trial judge was approached by an alternate juror, M, who indicated that she wanted to speak to the judge. The trial judge instructed the courtroom clerk to speak with the juror. M told the clerk that one of the jurors, L, had stated to the other jurors that he knew the defendant or had seen him "on the street," that the defendant was not a nice person and that "they're going to get this guy for something." The clerk informed the trial judge of M's statements, and the trial judge called counsel into court and had the clerk disclose M's statements to them. The next day when court reconvened, the trial judge instructed the clerk to state for the record the statements M made to him. The trial judge decided that it would be necessary to call M into open court to ascertain exactly what she overheard or what had been said to her. Counsel would be given the opportunity to submit questions to the court for the court to ask the juror.

M testified that L stated to the other jurors that he knew the defendant and had seen him "on the street," that the defendant was "not a very nice person" and that "they're going to get this guy for something." She testified that when she heard the statements, she thought that it did not seem right to her and that she should bring this matter to the court's attention. She said that she realized that L did not know the defendant personally. M also said that at a subsequent break in the jury deliberating room, another juror asked her what she thought about what L had said and then commented that "it didn't seem right." When M was asked by the trial judge if she could sit fairly and impartially and decide the case solely on the basis of the evidence presented, M answered, "Yes."

The court then examined L. L stated that he had realized after the trial began that he recognized the defendant as a man he had seen once before when L worked as an automobile mechanic, towing vehicles. L

stated that he told the other jurors in the jury room that he knew the defendant. L also stated that he had no idea if the defendant was a nice person because he had never spoken with him and saw him only on that one occasion for a short period of time. L twice denied telling the other jurors that the defendant was not a very nice person and that "they" would get him for something.

On the basis of the testimony of M and L, the trial judge determined that a separate inquiry of the remaining five jurors and two alternates would be necessary. Juror W testified that another juror, while in the jury room, said that he knew the defendant on the street in the past. She stated that she could keep an open mind and decide the case on the basis of the evidence. Juror T testified that in the jury room with all the jurors present, another juror said that he thought he saw the defendant once and that the defendant was "a pretty tough fellow." T said that he "tightened up a little bit" when he heard the statements. When asked if he could decide the case fairly, T replied, "Absolutely yes." He also stated that he could put aside what he had heard and decide the case on the basis of the evidence.

Jurors P and R testified that they did not hear any statements concerning the defendant. Juror K testified that she heard a juror mention that he passed the defendant on the street once and that she heard the juror say something to the effect that the defendant "did bad" and "he knows he is in trouble." When asked if she could be fair and impartial, K responded, "Oh, sure. It hasn't changed anything." She stated that she could put the statements aside and decide the case on the basis of the evidence. Juror A, an alternate, testified that he heard one juror state that he had seen the defendant on the street, but that no statements were made concerning what kind of person the defendant was or what should happen to the defendant, and that what he heard would

in no way affect his decision. Juror C, another alternate, testified that one juror stated that he knew the defendant, not personally, but that he had seen the defendant "on the street." C also testified that nothing was said as to whether the defendant was a bad person or concerning what should happen to him.

Thus, three of the jurors testified to hearing L's statements regarding the defendant, namely, that the defendant was "not a very nice person," that the defendant is "a pretty tough fellow," that "he did bad" and "he knows he is in trouble," and that "they're going to get this guy for something." Two jurors had no recollection whatsoever; the rest of the jurors and alternate jurors who heard something heard statements to the effect that L either knew the defendant or had seen him "on the street." The trial judge instructed all of the jurors and the alternate jurors that they must decide the case solely on the basis of the evidence, and all of them testified that they could decide the case fairly and impartially.

Subsequent to the court's questioning of the jurors, the defendant requested that L be removed from the jury panel. The state did not object and agreed that L should be discharged and replaced with one of the alternates. Before ruling, the trial court recessed so that defense counsel could confer with the defendant. After the recess, the defendant moved for a mistrial. The defendant acknowledged that the trial court had fully complied with the mandates of *State* v. *Brown*, 235 Conn. 502, 668 A.2d 1288 (1995),[2] and had made an

---

[2] In *State* v. *Brown*, supra, 235 Conn. 526, our Supreme Court held: "Exercising our inherent supervisory power over the administration of justice, we now hold that henceforth a trial court must conduct a preliminary inquiry, on the record, whenever it is presented with any allegations of jury misconduct in a criminal case, regardless of whether an inquiry is requested by counsel. Although the form and scope of such an inquiry lie within a trial court's discretion, the court must conduct some type of inquiry in response to allegations of jury misconduct. That form and scope may vary from a preliminary inquiry of counsel, at one end of the spectrum, to a full

adequate inquiry into the alleged juror misconduct. The defendant also admitted that L's statement that he knew the defendant from the street, if considered alone, was not prejudicial to the defendant. He claimed, however, that when combined with the other comments, the statements compromised the defendant's right to a fair and impartial jury, and that no action short of a mistrial would be sufficiently curative. The state agreed that L should be removed, but argued that the trial should proceed with the remaining jurors and alternate jurors. Thereafter, the trial court discharged L from the juror panel and reserved decision on the motion until the following day.

The next day, the trial court denied the defendant's motion because it concluded that the grounds for a mistrial did not exist. The trial court explained that it did not take extensive notes when the jurors were testifying because the court "wanted to look right at the jurors, observe them as they were talking, observe their reactions and form [its] opinion . . . ." The court stated that case law mandates that consideration of extrinsic evidence by a juror is presumptively prejudicial to a defendant because it implicates a defendant's constitutional right to a fair trial by an impartial jury. The court noted, however, the distinction in the law between the mere expression of opinion as opposed to a positive expression of fact, and that in the former instance a mistrial is not warranted. The court stated that in the present case the kind of statements made were not of particular facts but rather statements of an opinion type.

The court also stated: "I did observe all of these jurors very closely and I thought all of them were being very

evidentiary hearing at the other end of the spectrum, and, of course, all points in between. Whether a preliminary inquiry of counsel, or some other limited form of proceeding, will lead to further, more extensive, proceedings will depend on what is disclosed during the initial limited proceedings and on the exercise of the trial court's sound discretion with respect thereto."

honest and very candid and very genuine and sincere in their statement to the court . . . . [T]his would not in any way affect their judgment in the case . . . ." The court found the jurors' statements to be "very credible." The court stated that "based on my assessment of the jurors that came in to take the stand and aware of the jurors' oath . . . we do not have a situation where they have formed an opinion of the accused . . . that is going to affect the way they view the accused or impact on their ability to be objective and impartial."

The alternate juror who had called the court's attention to the improper remarks, M, was not selected as a juror to replace L. Alternate juror C became a regular member of the jury. The final deliberating body consisted of four jurors who had heard some of the remarks of L about the defendant and two jurors who had not heard anything said by L. Before beginning our discussion of whether the defendant was denied a fair trial by an impartial jury, we want to emphasize that the trial court conducted an exemplary examination of the jurors and alternates to determine the scope of the juror misconduct. We further note that the trial court and the parties acknowledged during the colloquy following the defendant's motion for a mistrial, that no Connecticut case had decided the precise issue on the basis of facts similar to those in this case.

The defendant claims that the statements made were so prejudicial to him that he was denied his constitutional right to a fair trial. The defendant claims that L expressed "specific personal knowledge that the defendant was not a nice person and that the jury will get the defendant on something," and that those statements were tantamount to the juror's becoming a witness and prosecutor against the defendant. The defendant, who is black, also claims that the fact that the juror who made the statements was the only black juror gave credibility to the statements and "would likely influence

the remaining jurors to convict a black defendant." The defendant argues that the trial court abused its discretion in denying his motion for a mistrial, necessitating a new trial. The defendant urges, in the alternative, that, if no abuse of discretion is involved, this court exercise its supervisory authority over the administration of justice and grant him a new trial.

The standard of review in the usual criminal case involving the conduct of a juror is whether the trial court abused its discretion; *State* v. *Brown*, supra, 235 Conn. 524; in other "highly unusual cases," review centers around whether the appellate court should exercise its supervisory power to demonstrate a lack of tolerance for the kind of conduct involved; *State* v. *Pouncey*, 241 Conn. 802, 812, 699 A.2d 901 (1997); and in yet others, it is whether the particular conduct or practice is so egregious as to undermine the structural integrity of the tribunal. See *Arizona* v. *Fulminante*, 499 U.S. 279, 309–310, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991). We conclude that the facts of this case require that we exercise our supervisory authority over the administration of justice and order a new trial because we view the juror misconduct here as a contaminant affecting the structural integrity of the defendant's trial.

I

SUPERVISORY AUTHORITY

"Due process requires that a criminal defendant be given a fair trial before an impartial jury. U.S. Const., amend XIV; Conn. Const., art. I, § 8. *State* v. *Brigandi*, 186 Conn. 521, 542, 442 A.2d 927 (1982)." (Internal quotation marks omitted.) *State* v. *Davis*, 32 Conn. App. 21, 27, 628 A.2d 11 (1993). "Impartiality is not a technical conception. It is a state of mind. For the ascertainment of this mental attitude of appropriate indifference, the

[c]onstitution lays down no particular tests and procedure is not chained to any ancient and artificial formula." (Internal quotation marks omitted.) *State* v. *Cubano*, 203 Conn. 81, 88, 523 A.2d 495 (1987). Because there is no exact formula to test the impartiality of jurors, an appellate decision to invoke its supervisory authority to check the decision of a trial court as to that impartiality is discretionary. *State* v. *Pouncey*, supra, 241 Conn. 810 n.7.

We are aware that in Connecticut the general rule is that a trial court enjoys wide discretion in deciding whether a mistrial is warranted and that the courts of this state have "never hastened to find error in a trial court's failure to grant a mistrial." *State* v. *Hancich*, 200 Conn. 615, 626, 513 A.2d 638 (1986). In spite of the general rule, however, our courts have recognized that a motion for a mistrial must be granted in instances where the failure to grant the motion would "countenance the trivialization . . . of our constitution" even though the state has presented sufficient evidence to sustain a defendant's conviction. Id. In *Hancich*, the trial court had misstated the number of peremptory challenges to which the defendant was entitled and, therefore, a new trial was ordered by our Supreme Court.

We may invoke our supervisory authority even when the defect or error claimed is not so egregious as to have denied a defendant a fair trial if the claimed error or defect is unduly offensive to the maintenance of a sound judicial system. *State* v. *Pouncey*, supra, 241 Conn. 811–12. Whether to reverse a conviction on this basis takes into account several factors, which include a balancing of the interests involved, the extent of prejudice to the defendant, the emotional trauma to the victim and others who would have to testify again in a new trial, the practical problems due to a time lapse before a new trial can occur, the availability of other

sanctions and whether the kind of conduct involved is widespread or used in other trials. Id., 813–16. Appellate courts are charged with the duty to exercise appropriately their inherent authority to safeguard the administration of justice. *State* v. *Day*, 233 Conn. 813, 855, 661 A.2d 539 (1995). Appellate review, therefore, should take into account the factors enumerated in *Pouncey*.

The interests involved here are those personal to the defendant and the public's right to jury impartiality during the entire course of the trial. The prejudice to the defendant arises from the jury being told that he was not of exemplary character based on extrinsic statements not presented to the jurors as part of the state's case, and the fact that the statements were made during the course of the trial rather than after its conclusion. The crimes charged here do not involve an individual victim-witness. A sanction, such as a rule change, would not cure the problem as was suggested in *State* v. *Day*, supra, 233 Conn. 855–56, and the statements were not cumulative of other evidence. See *State* v. *Rodriguez*, 210 Conn. 315, 330, 554 A.2d 1080 (1989).

Although the testimony of each juror that he or she could be fair and impartial is significant, it is not determinative. Id. It is not determinative because when a trier of fact becomes privy to evidence that is statutorily or constitutionally prohibited, or which is not part of the evidence presented to it, a new trial becomes necessary even though there is no indication that such evidence affected the decision of the fact finder. See *State* v. *Fitzgerald*, 54 Conn. App. 258, 265, 737 A.2d 922 (1999); see also *Borkowski* v. *Borkowski*, 228 Conn. 729, 747–48, 638 A.2d 1060 (1994); *Barbieri* v. *Cadillac Construction Corp.*, 174 Conn. 445, 451, 389 A.2d 1263 (1978) (per curiam). In *Fitzgerald*, *Borkowski* and *Barbieri*, the fact finder was a court, rather than a jury, as in this case. If there is no assurance that a trial judge trained

in impartiality can put aside extrinsic, prejudicial evidence, it should not be assumed that the jurors in this case could either, in spite of their protestations to the contrary.

We conclude that we should exercise our supervisory authority over the administration of justice in this extraordinary case, as has been done in other extraordinary cases; see *State* v. *Brown*, supra, 235 Conn. 522–32; *State* v. *Breton*, 235 Conn. 206, 250, 663 A.2d 1026 (1995); *State* v. *Jones*, 234 Conn. 324, 346, 662 A.2d 1199 (1995); *State* v. *Patterson*, 230 Conn. 385, 390, 645 A.2d 535 (1994), on appeal after remand, 236 Conn. 561, 674 A.2d 416 (1996); *State* v. *Holloway*, 209 Conn. 636, 645–46, 553 A.2d 166, cert. denied, 490 U.S. 1071, 109 S. Ct. 2078, 104 L. Ed. 2d 643 (1989);[3] to conclude that a new trial is necessary.

II

STRUCTURAL INTEGRITY

There is a unique type of error that cannot be reviewed in terms of trial court discretion or abuse of discretion, its harmlessness or harmfulness to the defendant or its prejudice to the defendant, because it is a defect in the trial mechanism itself that defies such an analysis and requires automatic reversal. In such cases, analysis in terms of whether discretion was abused cannot be utilized because the defect is incurable and not correctable. The defect cannot, by definition, ever be cured by a discretionary act.

When the error undermines the structural integrity of the tribunal, no review for harmless error or prejudice to the defendant need be made. Such an error can

---

[3] We recognize that the cases cited affect the future conduct of other trials rather than the trial of a particular defendant; *State* v. *Patterson*, supra, 230 Conn. 385; but there is nothing in the doctrine of supervisory appellate authority to limit its scope to prospective application. See *State* v. *Pouncey*, supra, 241 Conn. 813.

never be harmless and automatically calls for reversal and a new trial. See *Chapman* v. *California*, 386 U.S. 18, 23, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). For example, an automatic reversal is required when the judge has a financial interest in the outcome of a trial despite the lack of any indication that his bias affected the outcome; *Tumey* v. *Ohio*, 273 U.S. 510, 535, 47 S. Ct. 437, 71 L. Ed. 749 (1927); or when there is a systematic exclusion from a grand jury of blacks; *Vasquez* v. *Hillery*, 474 U.S. 254, 263–64, 106 S. Ct. 617, 88 L. Ed. 2d 598 (1986); or when a defendant has been denied the assistance of counsel; *Glasser* v. *United States*, 315 U.S. 60, 76, 62 S. Ct. 457, 86 L. Ed. 680 (1942); or when inherently adverse publicity has tainted the trial; *Sheppard* v. *Maxwell*, 384 U.S. 333, 351–52, 86 S. Ct. 1507, 16 L. Ed. 2d 600 (1966); or when there exists purposeful discrimination in the selection of jurors. *Whitus* v. *Georgia*, 385 U.S. 545, 549–50, 87 S. Ct. 643, 17 L. Ed. 2d 599 (1967). These cases do not involve trial error occurring during the presentation of the case to the jury but involve extrinsic factors not occurring in the courtroom. Nor do they require any showing of prejudice to the defendant. These cases recognize that violation of some constitutional rights, such as the right to a trial by an impartial jury, may require reversal without regard to the evidence in the particular case. This type of structural error renders a trial fundamentally unfair and is not susceptible to a harmless error analysis; see *Rose* v. *Clark*, 478 U.S. 570, 577–78, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986); or an analysis based on prejudice to a defendant. See *State* v. *Booth*, 250 Conn. 611, 649, 737 A.2d 404 (1999). A harmless error analysis presupposes a trial at which a defendant is represented by counsel, and evidence and argument are presented in the courtroom before an impartial judge and jury. *Rose* v. *Clark*, supra, 578. When a structural error analysis is undertaken and such an error exists, the proceeding is vitiated. See *Arizona* v. *Fulminante*, supra, 499 U.S.

309–10; *State* v. *Cruz*, 41 Conn. App. 809, 811, 678 A.2d 506, cert. denied, 239 Conn. 908, 682 A.2d 1008 (1996); *State* v. *Suplicki*, 33 Conn. App. 126, 130, 634 A.2d 1179 (1993), cert. denied, 229 Conn. 920, 642 A.2d 1216 (1994).

Even when the evidence for conviction is overwhelming and a trial is otherwise fair, the taint attributable to a structural defect cannot be purged. *Vasquez* v. *Hillery*, supra, 474 U.S. 263–64. "When constitutional error calls into question the objectivity of those charged with bringing a defendant to judgment, a reviewing court can neither indulge a presumption of regularity nor evaluate the resulting harm." Id., 263.

Practice Book § 42-43 provides that a mistrial may be declared when there is "an error or legal defect in the proceedings, or any conduct inside or outside the courtroom which results in substantial and irreparable prejudice to the defendant's case. . . ." We view the remarks the dismissed juror made to the others as a legal defect requiring a new trial.

We are not, in this case, considering the competency of each of the jurors to serve, but whether the seeds of one juror's opinion of the defendant interfered with the defendant's right to due process to such an extent that nothing short of the declaration of a mistrial could cure that interference. See *State* v. *Couture*, 194 Conn. 530, 562–64, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985). When the taint is so egregious as to be incurable, a new trial is warranted even if no prejudice to the defendant can be shown; id., 564; because a criminal trial protects not only the defendant but the entire citizenry. *State* v. *Brown*, supra, 235 Conn. 527. There are rights, such as those of a defendant to a fair and impartial jury, that protect values unrelated to the truth seeking function

of a particular trial. See *Rose* v. *Clark*, supra, 478 U.S. 577–78.

This case is not about whether one juror should be removed from the panel because of bias,[4] but whether, if, in the aggregate, the presumption that the extrinsic remarks were prejudicial could be overcome. Our inquiry relates to the nature of the remarks, not to the belief of each juror in his or her own fair-minded mental process.

The assurances of jurors that they are capable of the task is but one facet in a determination of the presence of bias. We conclude, however, that this case does not require an inquiry into whether bias existed, but an inquiry into the kind of defect L's conduct caused. This case involves a systemic flaw the nature of which makes it difficult to assess its effect on the defendant. We conclude that the rule of mandatory reversal because of a structural defect should be applied.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

---

[1] In denying the motion for a mistrial, the trial court relied on *State* v. *Cubano*, supra, 203 Conn. 81. We view that case as inapposite because it did not involve juror misconduct, but speculation as to the possible bias of one juror who revealed to the parties and the court, after both summations had been given, that one of her close friends, whom she saw in the courtroom during the summations, might be a friend of the defendant.