STATE OF CONNECTICUT *v.* MICHAEL A. INZITARI
(AC 22625)

Flynn, West and McDonald, Js.

Argued March 17—officially released April 29, 2003

*Glenn W. Falk*, special public defender, for the appellant (defendant).

*Frank J. MacPhail*, certified legal intern, with whom were *David I. Cohen*, state's attorney, and, on the brief, *Rita M. Shair*, senior assistant state's attorney, and *James Bernardi*, supervisory assistant state's attorney, for the appellee (state).

PER CURIAM. The defendant, Michael A. Inzitari, appeals from the judgment of conviction, following a jury trial, of two counts of arson in the first degree in violation of General Statutes § 53a-111 (a) (2) and (4).[1] On appeal, the defendant claims that the trial court improperly denied his motion for a mistrial filed on the basis of the charges against him and the events of September 11, 2001. We disagree and affirm the judgment of the trial court.

The charges against the defendant, who was a security guard and volunteer firefighter, arose out of a fire he and Walter D'Agostino set at 737 Canal Street in Stamford on December 3, 2000. The defendant had viewed the television movie "Backdraft" and wanted to see an all-night fire. Section 53a-111 (a) provides in relevant part: "A person is guilty of arson in the first degree when, with intent to destroy or damage a building . . . he starts a fire . . . and . . . (4) at the scene of such fire . . . a . . . firefighter is subjected to a substantial risk of bodily injury." General Statutes § 53a-111 (a). During the trial, the state presented evidence of a firefighter who had slipped on a roof and another firefighter who had sustained a rib injury when he slipped on frozen water from a fire hose.

The evidence portion of the trial commenced on September 10, 2001. On the morning of September 11, 2001, terrorists hijacked four airplanes and crashed them into the towers of the World Trade Center in New York City, the Pentagon and a field in western Pennsylvania. The jurors were sent home on September 11, 2001. Trial resumed on September 12, 2001, at which time the defendant filed a motion for a mistrial, claiming that the publicity surrounding the terrorist events of Septem-

---

[1] The court merged the conviction of the two counts for sentencing and sentenced the defendant to eight years in prison and seven years of special probation.

ber 11, 2001, would prevent him from receiving a fair and impartial trial due to the prejudice created by the news coverage, particularly with respect to the firefighters who lost their lives in New York City, because he was charged with arson that subjected firefighters to substantial injury. The defendant also requested that he be permitted to voir dire the jurors individually as to their ability to be fair and impartial as a result of the terrorist attack.[2] The state opposed the motion, arguing, in part, that the events of September 11, 2001, were acts of terrorism committed by individuals of Middle Eastern heritage and were not at all similar to the charges against the defendant.

To resolve the defendant's motion for a mistrial, the court addressed the jury, explaining the need for a fair and impartial trial for the defendant. The court then conducted an individual voir dire of the jurors.[3] Following the voir dire of the entire jury panel, and in consultation with counsel, the court excused two jurors who believed that due to the events of September 11, 2001, they could no longer be fair and impartial.[4]

---

[2] The court denied the defendant's request to voir dire.

[3] The court addressed the jury in relevant part as follows: "Good morning, folks. I want to thank you for your attention of duty here in coming in today. The events of yesterday were deeply disturbing to all of you, I'm sure.

"One of the issues that I have to inquire into as a judge and to make sure that what we all do is to make sure that we give [the defendant] a fair and impartial trial in a case such as this. This man is charged with arson in the first degree in two counts of this information, as I read to you in this case.

"The issue in my mind, and as well as counsel . . . as to whether or not anything rose to a level yesterday, in your mind, or created something in your mind which would not allow you to give this man a fair and impartial trial in terms of charges in this case. It's critically important to our system that as you sit there and listen to the evidence in the case that you give this man a fair shake. We all want to be treated fairly and in an unbiased fashion.

"So, in just a moment, I intend to have you out individually to ask whether or not, given what has happened yesterday, you feel that you can sit here and listen to the balance of the evidence in this case and give this man a fair and impartial trial in this particular case."

[4] One of the jurors was concerned about her friends who worked at the World Trade Center.

The court ruled on the defendant's motion for a mistrial, stating: "Based upon the inquiry that the court has made, given the disclosures that have been given, the court feels that the court has gone out of its way to make sure that the defendant in this particular case is given a fair and impartial trial, that the events of yesterday will not influence the ability of the remaining jurors to be fair and impartial in this case. It's quite clear that the remaining jurors have without question indicated their ability to go on and serve and give everybody a fair trial in this matter. Since the basis of the motion goes to that very question, I feel that there is no inevitable prejudice here, there is no damage to the defendant's case and that the implication of his right to a fair trial and impartial jury has been covered in detail by the court, and the remaining jurors will give him that, a fair and impartial trial. Therefore, your motion is denied."

"The standard for review of an action upon a motion for a mistrial is well established. While the remedy of a mistrial is permitted under the rules of practice, it is not favored. [A] mistrial should be granted only as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial . . . and the whole proceedings are vitiated. . . . If curative action can obviate the prejudice, the drastic remedy of a mistrial should be avoided. . . . On appeal, we hesitate to disturb a decision not to declare a mistrial. The trial judge is the arbiter of the many circumstances which may arise during the trial in which his function is to assure a fair and just outcome. . . . The trial court is better positioned than we are to evaluate in the first instance whether a certain occurrence is prejudicial to the defendant and, if so, what remedy is necessary to cure that prejudice. . . . The decision whether to grant a mistrial is within the sound discretion of the trial court." (Citations omitted; internal quotation marks omitted.)

*State* v. *Taft*, 258 Conn. 412, 418, 781 A.2d 302 (2001); see Practice Book § 42-43.

We have considered the arguments of the defendant here and in the trial court, the nature of the charges against him and the tragic events of September 11, 2001, and conclude that the court properly denied the motion for a mistrial and the request to voir dire the jury. The remedial steps taken by the court are similar to those approved by our Supreme Court in *State* v. *Anderson*, 255 Conn. 425, 437, 773 A.2d 287 (2001). Here, the court took the necessary steps to ensure that the jury was fair and impartial and that the defendant's trial was free from substantial and irreparable prejudice.[5]

The judgment is affirmed.

---

[5] Neither the defendant's motion for a mistrial in the wake of September 11, 2001, nor the court's denying it are unique. See *United States* v. *Merlino*, 204 F. Sup. 2d 83, 89–90 (D. Mass. 2002) ("[d]efendants were not charged with terrorism, but with common garden-variety crimes, distinctive only for their audacity, and not for any resemblance to the heinous attacks of the terrorists").