STATE OF CONNECTICUT *v.* WILLIAM
SUNDERLAND
(AC 20430)

Lavery, C. J., and Foti and Schaller, Js.

---

Argued May 7—officially released September 11, 2001

*Richard S. Cramer*, for the appellant (defendant).

*Michael L. Regan*, senior assistant state's attorney, with whom, on the brief, was *Kevin T. Kane*, state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, William Sunderland, appeals from the judgment of conviction, rendered after a jury trial, of two counts of arson in the first degree in violation of General Statutes § 53a-111 (a).[1] On appeal, the defendant's sole claim is that the trial court improperly denied his motions for a mistrial and for a new trial based on allegations of jury misconduct and,

---

[1] General Statutes § 53a-111 (a) provides in relevant part: "A person is guilty of arson in the first degree when, with intent to destroy or damage a building . . . he starts a fire or causes an explosion, and (1) the building is inhabited or occupied or the person has reason to believe the building may be inhabited or occupied; or (2) any other person is injured, either directly or indirectly; or (3) such fire or explosion was caused for the purpose of collecting insurance proceeds for the resultant loss; or (4) at the scene of such fire or explosion a peace officer or firefighter is subjected to a substantial risk of bodily injury."

thus, violated his right to a fair trial. We affirm the judgment of the trial court.

The following facts and procedural history pertain to our resolution of the present appeal. In the early morning of April 27, 1997, a fire occurred at the defendant's home in the town of North Stonington. Officials concluded that arson was the cause of the fire. They further suspected that the defendant had committed the arson on his own home to collect the insurance proceeds. Subsequently, the defendant was charged with two counts of arson in the first degree, and a trial by a six member jury commenced on September 21, 1999.

On September 30, 1999, the jury began deliberations on the matter. The court, a few days later, received notice that juror L wanted to speak with the court.[2] Upon appearing in open court, L informed the court that, while the trial was in progress but prior to deliberations, he had overheard some fellow jurors discussing extraneous information concerning the trial. L noted that one juror, O, had made statements about when the close of evidence would take place, which information she had derived from a friend. L further advised the court that another juror, C, had stated that the prosecutor in the case suffered from a brain tumor. That same juror, according to juror L, also stated that the defendant made her nervous and that she could not stand it when he looked at her. After volunteering this information, L advised the court that he could not continue with deliberations because he did not think doing so would be fair to the defendant. The court inquired of L whether he could be fair and impartial regardless of the extraneous information. In response, L stated the following: "I feel that I would stand opposite to every-

---

[2] We use the initials of the jurors to protect their legitimate privacy interests.

one else and it would just continue. I don't feel that I would be able to change anybody's mind. And I don't know if my decision would be fair. I really don't." Pursuant to *State* v. *Brown*, 235 Conn. 502, 526, 668 A.2d 1288 (1995) (en banc), the court decided to hold a hearing, at which it would call each of the jurors into open court to investigate the allegations of jury misconduct and to determine whether such conduct prejudiced the defendant.

Shortly thereafter, the trial court began the hearing by summoning juror C. C testified that there had been some discussion among the jurors concerning the attorneys' demeanor during the trial. With respect to the prosecutor, some jurors made derogatory comments about his speaking abilities. C told the court that, in an effort to defend the prosecutor's speech, she had informed the other jurors that the prosecutor suffered from a brain tumor. She had learned this information from a family member. Following C's testimony, the court asked C if the extraneous information she had heard would affect her ability to decide the case in a fair and impartial manner. She responded in the negative.

The court continued the hearing by summoning each of the jurors. While some jurors testified that they had discussed minor extraneous information regarding the attorneys, others testified that they had not even heard such discussions. Nevertheless, upon inquiry by the court, *all* of the jurors stated that they could decide the case solely on the evidence and the law in a fair and impartial manner.

The trial court also asked juror O how she had learned when the presentation of evidence would be completed. O informed the court that she knew the wife of an attorney who was acquainted with the defense counsel. According to O, she had not discussed substantive issues regarding the case itself with the attorney's wife. They had discussed, however, approximately how long

the case would last. The court inquired of O whether she could decide the case in a fair and impartial manner in light of her conversation with the attorney's wife. In response, O emphasized that she could decide the matter fairly.

At the conclusion of the hearing, the defendant filed a motion for a mistrial based on the discussions by various jurors of extraneous information. The trial court denied the motion. In doing so, the court acknowledged concern over the jurors' discussions regarding extraneous information but ultimately decided that they could decide the case fairly and impartially.

The court subsequently addressed the jury collectively and instructed it that the case must be decided solely on the evidence and the law, and in a fair and impartial manner. The court further stated that neither the personalities of the attorneys nor sympathy for any party should play a role in the jury's deliberations.

The court decided to interview the jurors individually a second time. In the process, five jurors informed the court, without hesitation, that they could decide the case fairly and impartially. When the court questioned juror L as to whether he could so decide the case, L hesitated but eventually informed the court that he was concerned because the other jurors were attempting to sway his decision. L expressed concern that such pressure made him feel as though his decision could not be fair. The court, at length, explained to L that even though the jury verdict has to be unanimous, each juror would have to resolve the matter in his or her own mind. After hearing the trial court's explanation, L noted that he could weigh the evidence and come to a conclusion in a fair manner. The court ordered the jury to continue with deliberations.

On that same day, the jury returned a verdict of guilty. The defendant filed a motion for a new trial based on

the same claims of jury misconduct that he had raised in his motion for a mistrial. In denying the motion for a new trial, the court reasoned that no jury misconduct had occurred that prejudiced the defendant. The court, in addition, stated that L's concerns were the result of pressure that he felt from the other jurors regarding his decision in the case. This appeal followed.

The defendant claims that the court improperly denied his motions for a mistrial and for a new trial that were based on allegations of jury misconduct and, thus, violated his right to a fair trial. We are not persuaded.

As a threshold matter, we set forth the proper standard of review applicable to this matter. "In . . . review of the denial of a motion for mistrial, [our Supreme Court has] recognized the broad discretion that is vested in the trial court to decide whether an occurrence at trial has so prejudiced a party that he or she can no longer receive a fair trial. The decision of the trial court is therefore reversible on appeal only if there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Anderson,* 255 Conn. 425, 435, 773 A.2d 287 (2001).

When presented with allegations of jury misconduct, a trial court should exercise its discretion wisely because such allegations have serious implications. "Jury impartiality is a core requirement of the right to trial by jury guaranteed by the constitution of Connecticut, article first, § 8, and by the sixth amendment to the United States constitution. . . . [T]he right to a jury trial guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors. . . . The modern jury is regarded as an institution in our justice system that determines the case solely on the basis of the evidence and arguments given [it] in the adversary

arena after proper instructions on the law by the court. . . .

"To ensure that the jury will decide the case free from external influences that might interfere with the exercise of deliberate and unbiased judgment . . . a trial court is required to conduct a preliminary inquiry, on the record, whenever it is presented with information tending to indicate the possibility of juror misconduct or partiality. . . . [A] trial court should consider the following factors in exercising its discretion as to the form and scope of a preliminary inquiry into allegations of jury misconduct: (1) the criminal defendant's substantial interest in his constitutional right to a trial before an impartial jury; (2) the risk of deprivation of the defendant's constitutional right to a trial before an impartial jury, which will vary with the seriousness and the credibility of the allegations of jury misconduct; and (3) the state's interests of, inter alia, jury impartiality, protecting jurors' privacy and maintaining public confidence in the jury system. . . .

"Any assessment of the form and scope of the inquiry that a trial court must undertake when it is presented with allegations of jury [bias or] misconduct will necessarily be fact specific. No one factor is determinative as to the proper form and scope of a proceeding. It is the trial court that must, in the exercise of its discretion, weigh the relevant factors and determine the proper balance between them. . . . Consequently, the trial court has wide latitude in fashioning the proper response to allegations of juror bias. . . . We [therefore] have limited our role, on appeal, to a consideration of whether the trial court's review of alleged jury misconduct can fairly be characterized as an abuse of its discretion. . . . Although we recognize that trial [c]ourts face a delicate and complex task whenever they undertake to investigate reports of juror misconduct or bias . . . we nevertheless have reserved the right to

find an abuse of discretion in the highly unusual case in which such an abuse has occurred. . . . Ultimately, however, [t]o succeed on a claim of [juror] bias the defendant must raise his contention of bias from the realm of speculation to the realm of fact. . . . Finally, when, as in this case, the trial court is in no way responsible for the alleged juror misconduct, the defendant bears the burden of proving that the misconduct actually occurred and resulted in actual prejudice." (Citation omitted; internal quotation marks omitted.) *State* v. *Feliciano*, 256 Conn. 429, 447–49, 778 A.2d 812 (2001).

Applying these principles to the present case, we conclude that the trial court did not abuse its discretion in finding that the defendant failed to meet his burden of proving that the misconduct actually occurred *and resulted in actual prejudice.* The court conducted a thorough inquiry by interviewing each juror and, by doing so, adequately shielded the defendant's right to a fair trial before an impartial jury. The court did determine that some jurors mentioned extraneous information, such as juror O's comment about the date at which evidence would close, juror C's explanation regarding the prosecutor's speech and her statement that the defendant made her nervous when he looked at her. Nonetheless, the court found that the comments would not result in actual prejudice to the defendant. The court asked all of the jurors whether they could be impartial and base their decisions solely on the evidence. Nearly all of the jurors, except juror L, responded in the affirmative without reluctance. Ultimately, juror L agreed that he could be fair and impartial. Acting within the scope of its duty, the court determined that the jurors were credible in responding that they could be fair and that they could base their decisions solely on the evidence presented at trial. See *State* v. *Newsome*, 238 Conn. 588, 631, 682 A.2d 972 (1996) (trial court that conducts inquiry in best position to assess

testimony of those on jury panel). We conclude that the court did not abuse its discretion in denying the defendant's motions for a mistrial and for a new trial that were based on allegations of jury misconduct.[3]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[3] In the alternative, the defendant requests that we exercise our supervisory powers over the administration of justice and order a new trial. As authority for his position, the defendant cites in his brief to *State* v. *Anderson*, 55 Conn. App. 60, 69, 738 A.2d 1116 (1999), in which we exercised our supervisory powers under circumstances similar to those in the present case. Since the parties filed their briefs, however, our Supreme Court has reversed that decision. *State* v. *Anderson*, supra, 255 Conn. 425. We therefore decline the defendant's invitation to exercise our supervisory powers on this matter.