STATE OF CONNECTICUT *v.* NATHANIEL BOYKIN
(AC 21209)

Foti, Schaller and Mihalakos, Js.

Argued December 4, 2002—officially released January 28, 2003

*Richard W. Callahan*, special public defender, for the appellant (defendant).

*Robin S. Schwartz*, deputy assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Cornelius P. Kelly*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Nathaniel Boykin, appeals from the judgment of conviction, after a jury trial, of the crimes of attempt to commit murder in violation of General Statutes §§ 53a-49 and 53a-54a (a),[1] and sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1).[2] On appeal, the defendant claims that the trial court improperly (1) denied his motion for a mistrial after the state, during its case-in-chief, introduced evidence of his prior arrest record and (2) refused to permit him to testify as a surrebuttal witness. We affirm the judgment of the trial court.

On the basis of the evidence adduced at trial, the jury reasonably could have found the following facts. On the evening of April 9, 1999, the female victim spent

---

[1] General Statutes § 53a-49 (a) provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

[2] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

time socializing in a bar in Bridgeport. At around 2 a.m. on April 10, 1999, the victim left the bar and walked to a nearby McDonald's restaurant to purchase food. Upon arriving, the victim encountered the defendant, an acquaintance. McDonald's was not open for business at that hour, and the victim accepted the defendant's invitation to walk with her to a diner in Fairfield.

Upon their arrival at the diner, the victim and the defendant learned that it also was not open for business. At that point, the victim told the defendant that she intended to go to an empty parking area behind the diner to urinate. Shortly thereafter, while the victim was behind the diner partially undressed, the defendant pushed her to the ground and began to choke her. Despite the victim's efforts, both verbal and physical, to fend off the assault, the defendant forcibly positioned himself on top of the victim and forced her to perform oral sex and to engage in vaginal intercourse.

After he completed his sexual assault, the defendant told the victim that he could not trust her and began to choke her again. The victim freed herself from the defendant's hold on her neck and ran to a nearby motor inn where she summoned police assistance. When police arrived, they found the victim to be hysterical. The victim had scratch marks on her neck that were consistent with her allegation that the defendant had choked her. She told police that she had been raped, and the police found items of her personal property behind the diner. The results of rape kit tests performed on the victim after the assault were consistent with a finding that the defendant had engaged in sexual intercourse with the victim. After further investigation, police arrested the defendant and charged him with the crimes of which he was convicted. Additional relevant facts will be provided as necessary in the context of the defendant's claims.

I

The defendant first claims that the court improperly denied his motion for a mistrial after the state, during its case-in-chief, introduced evidence of his prior arrest record. We disagree.

The following additional facts underlie the defendant's claim. As part of its case-in-chief, the state called Frederick Hine, a detective in the Fairfield police department who had investigated the case, to testify. Hine testified as to the course of the investigation and, specifically, how the police came to identify the defendant as a suspect. Immediately after the incident, the victim identified the assailant solely as "Nate." Hine testified that by virtue of his interviews with the victim and on the basis of evidence that she provided to him, he ultimately learned the defendant's full name and interviewed him.

The prosecutor then asked Hine how he used the information that he learned during his initial interview with the defendant at the defendant's residence. Hine's response to that inquiry forms the basis of the present claim. The following colloquy occurred:

"[Prosecutor]: Okay. Now, after you went to [the defendant's residence] . . . did you do anything with the information that you had received while you were [there] concerning [the defendant]?

"[The Witness]: Yes. We then went to the Bridgeport police department now having the name Nathaniel Boykin and the date of birth. We completed a criminal history check on the name, uh, hoping to find that with an arrest record there may be a photograph."

The defendant's counsel immediately objected to Hine's response. The court ordered the response stricken and ordered the jury to ignore the response. The prosecutor then continued his examination of Hine:

"[Prosecutor]: Now, Detective Hine, you said that you went to the Bridgeport police department. After you conducted your investigation or an inquiry at the Bridgeport police department, did you do anything else with respect to this particular case? Do you remember what you did?

"[The Witness]: Yes. I asked the Bridgeport police department if—

"[Prosecutor]: Okay. Based upon your discussions with the Bridgeport police—let me couch it this way. Based upon your discussions with the Bridgeport police, did you get some information from them?

"[The Witness]: Yes.

"[Prosecutor]: General information.

"[The Witness]: Yes.

"[Prosecutor]: Okay. And based upon that information that you received from them, what did you do next in this investigation?

"[The Witness]: I was able to obtain a photographic array consisting of eight similar looking black male subjects, one of which was [the defendant].

"[Prosecutor]: Okay. And with that photographic array—what did you [do] with the photographic array?

"[The Witness]: That evening . . . we took the array and went to the home of [the victim] and showed it to her.

"[Prosecutor]: Okay. And was [the victim] able to make an identification at that point in time?

"[The Witness]: Yes. She immediately looked at— pointed to photograph number five and said, absolutely, without doubt, 100 percent sure she [was] that the sub-

ject in photograph number five was a photograph of the person who sexually assaulted her.

"[Prosecutor]: I'm going to show you what has been previously marked as a full exhibit. State's exhibit four. Do you recognize this particular document, sir?

"[The Witness]: Yes.

"[Prosecutor]: And what is this?

"[The Witness]: That's the photographic array, uh, that I obtained from the Bridgeport police department."

Shortly thereafter, the state rested its case. The defendant's counsel requested a mistrial. In support of his motion, the defendant's counsel argued that Hine testified that "he had contacted the Bridgeport police department, that they had a rap sheet on [the defendant] and that they had a photograph of [the defendant] . . . from a previous arrest, and that's how he got the photo array." The defendant's counsel posited that the defendant's "right to remain silent may have the effect of not allowing the jury to consider his previous felony conviction." Counsel further argued that he believed that the court's curative instruction would not remedy the prejudice caused to his client.

The prosecutor opposed the defendant's motion by arguing that Hine indicated merely that he had obtained a photograph of the defendant from the Bridgeport police department and that this testimony did not necessarily imply that the department possessed such photograph because the defendant previously had been convicted of a crime. The prosecutor also argued that contrary to the defendant's counsel's interpretation of Hine's testimony, Hine did not indicate that the Bridgeport police department had a "rap sheet" on the defendant. The prosecutor further pointed out that the photographic array submitted to the jury as an exhibit contained the phrase "Bridgeport police department."

The court denied the motion for a mistrial. It reasoned that any prejudice caused by Hine's remark was cured by the court's immediate cautionary instruction. The court noted that the statement was not "deliberate." Further, the court noted that Hine's testimony was not so severe as to lead to a conclusion that the jury would be unable to follow the court's instruction to disregard Hine's statement. The court also found it persuasive that the photographic array previously introduced as a full exhibit contained the phrase "Bridgeport police department." The court informed the defendant's counsel that should he so desire, the court would deliver another cautionary instruction to the jury in regard to Hine's testimony.

We begin our analysis by identifying the standard by which we will review the defendant's claim. "The decision as to whether to grant a motion for a mistrial . . . is one that requires the trial court to exercise its judicial discretion. . . . Our review of the trial court's exercise of its discretion is limited to questions of whether the court correctly applied the law and could reasonably have concluded as it did. . . . Every reasonable presumption will be given in favor of the trial court's ruling. . . . It is only when an abuse of discretion is manifest or where an injustice appears to have been done that a reversal will result from the trial court's exercise of discretion. . . .

"While the remedy of a mistrial is permitted under the rules of practice, it is not favored. . . . If curative action can obviate the prejudice, the drastic remedy of a mistrial should be avoided. . . . The general rule in Connecticut is that a mistrial is granted only where it is apparent to the court that as a result of some occurrence during trial a party has been denied the opportunity for a fair trial. . . . The trial court enjoys wide discretion in deciding whether a mistrial is warranted . . . and its evaluation as to events occurring before the jury is

to be accorded the highest deference. . . . Every reasonable presumption will be given in favor of the trial court's ruling . . . because the trial court, which has a firsthand impression of the jury, is in the best position to evaluate the critical question of whether the juror's or jurors' exposure has prejudiced a defendant. . . . It is only when an abuse of discretion is manifest or where an injustice appears to have been done that a reversal will result from the trial court's exercise of discretion. . . . A reviewing court gives great weight to curative instructions in assessing error." (Internal quotation marks omitted.) *State* v. *Aponte*, 66 Conn. App. 429, 449–50, 784 A.2d 991 (2001), cert. denied, 259 Conn. 907, 789 A.2d 995 (2002).

"The general rule is that evidence of the commission of other crimes or specific acts of misconduct is inadmissible to prove that a defendant is guilty of the crime charged against him." *State* v. *Talton*, 197 Conn. 280, 289, 497 A.2d 35 (1985). "Such evidence is admissible for other purposes, however, such as when it is particularly probative in showing such things as intent, an element in the crime, identity, malice, motive or a system of criminal activity, to name some exceptions to the rule." (Internal quotation marks omitted.) *State* v. *Hanks*, 39 Conn. App. 333, 344, 665 A.2d 102, cert. denied, 235 Conn. 926, 666 A.2d 1187 (1995). Additionally, under certain circumstances, a court may permit inquiry into a defendant's prior acts of misconduct; Conn. Code Evid. § 6-6 (b); or permit the introduction of evidence that a defendant has been convicted of certain crimes; id., § 6-7.[3] The state, however, cannot attempt to impeach a defendant's credibility by means of his criminal record unless the defendant himself puts his character at issue. *State* v. *Rodriguez*, 37 Conn. App. 589,

---

[3] The state did not claim the remark and likewise did not argue that Hine's remark fell into any of those exceptions.

614, 658 A.2d 98, cert. denied, 234 Conn. 916, 661 A.2d 97 (1995).

On appeal, the defendant argues that the court should have granted his motion for a mistrial because the state violated his due process rights by violating his "right to remain silent and the right to be acquitted absent proof of guilt beyond a reasonable doubt." For several reasons, we conclude that the defendant is unable to demonstrate that any constitutional violation occurred. As previously stated, we examine the court's exercise of discretion to determine whether it correctly applied the law and reasonably could have concluded as it did in denying the motion for a mistrial.

The starting point of our analysis is the allegedly improper statements themselves. First, we observe that Hine merely referenced a criminal arrest record. He testified: "We completed a criminal history check on the [defendant's] name . . . hoping to find that with an arrest record there may be a photograph." Hine then testified that after contacting the Bridgeport police department, he was able to obtain a photographic array that included the defendant's photograph. Hine's improper reference to a prior arrest was, at best, vague. Hine did not state that the defendant had been arrested, when such arrest might have occurred, if the defendant had been tried for a crime, what specific charges he might have faced, if he was convicted or if he was imprisoned. Simply stated, the remark's lack of specificity leads us to conclude that the remark did not unfairly prejudice the defendant in the eyes of the jury. See *State* v. *Talton*, supra, 197 Conn. 290–91; cf. *State* v. *Ferrone*, 97 Conn. 258, 268, 116 A. 336 (1922) (prejudicial effect of evidence tending to prove defendant was "notorious criminal" could not be remedied by subsequent curative measures).

Second, we note that after Hine mentioned "an arrest record," the court immediately struck Hine's testimony

and ordered the jury to disregard that testimony.[4] The immediacy of the court's instruction is persuasive. Given the nature of Hine's testimony, we conclude that it likely caused little or no prejudice to the defendant. Even if it did, we further conclude that the court's immediate curative instruction sufficiently cured any prejudice caused by the single improper reference to "an arrest record."

Third, having reviewed the transcript of the proceedings, we agree with the court that it does not reveal that the prosecutor deliberately elicited Hine's remark concerning "an arrest record" or that he sought to inject any evidence of a prior arrest into the proceeding. After the court struck Hine's statement, Hine testified that he was able to obtain a photographic array that contained the defendant's photograph from the Bridgeport police department. We conclude that this aspect of Hine's testimony was not improper. That testimony likewise did not suggest that the defendant had been arrested or that the Bridgeport police department had his photograph because he did anything wrong in the first instance. The court, during its charge, specifically instructed the jury not to consider the police photographic array to be evidence that the defendant previously had committed a crime.[5] Further, we note that the photographic array itself contained the notation "Bridgeport police department." It is not consistent for the defendant to complain, given the fact that the array was a full exhibit at trial, that Hine's testimony that he

---

[4] The court instructed the jury: "The last response of the witness is stricken and is to be ignored by the members of the jury."

[5] The court stated in relevant part: "A comment about the exhibit that included police photographs, ladies and gentlemen. The police have many pictures of people. Simply because the police have a person's picture does not mean that he has ever committed a crime before or since. So, please understand that there is no connection of guilt of any kind simply because some pictures of the defendant were in the possession of the police."

obtained the array from the police department in any way prejudiced the defendant's right to a fair trial.

Our conclusion that it is not likely that Hine's testimony deprived the defendant of a fair trial is bolstered by the fact that the state presented a strong case against the defendant. The victim positively identified the defendant, whom she knew prior to the sexual assault, as the assailant. Police who had investigated the assault testified about their observations of the victim on the night of the incident and statements that the defendant made thereafter during the course of their investigation. Furthermore, medical and forensic experts testified in corroboration of the victim's complaint.[6]

The trial judge enjoyed a superior vantage point from which to gauge the challenged testimony's likely effect on the jury and whether such testimony was of such nature as to warrant the disfavored remedy of a mistrial. Not every implication that a defendant previously has been arrested rises to the level of a constitutional violation. See State v. Talton, supra, 197 Conn. 287–92; State v. Pharr, 44 Conn. App. 561, 578–86, 691 A.2d 1081 (1997); State v. Rodriguez, supra, 37 Conn. App. 611–16. On the basis of the record before us, we conclude that the court properly exercised its discretion in denying the defendant's motion.

## II

The defendant next claims that the court improperly refused to permit him to testify as a surrebuttal witness. We disagree.

The facts and procedural history underlying the defendant's claim are as follows. As stated in part I,

---

[6] Despite hearing evidence that the defendant had told the police that he had not seen the victim for several months prior to the time of the alleged sexual assault, the defendant, at trial, testified that he had engaged in consensual sex with the victim on the night of the incident.

the state, during its case-in-chief, elicited testimony from Hine. During his testimony, Hine testified about his meetings with the defendant during the course of his investigation. Specifically, Hine testified that on April 13, 1999, he interviewed the defendant at the defendant's residence. Hine also testified that the defendant told him that at the time of the incident, he was with his girlfriend, Jocelyn Flores. Hine further testified that the defendant told him that he knew the victim, but that he had not seen her for approximately eight months. Hine testified that during a second interview of the defendant on April 21, 1999, the defendant informed him that he had spoken with an attorney and declined to make any further statements.

The defendant testified at trial. On cross-examination, the prosecutor specifically inquired whether the defendant recalled making the statements that Hine had attributed to the defendant. The defendant stated several times that he did not say anything to Hine. He testified that he recalled the investigators coming to his apartment and speaking with him, but stated that he did not say "one word" to them. He specifically denied having told police of the last time that he saw the victim. The defendant testified that he told police only that he knew who the victim was.

After the defense rested its case, the court permitted the state to recall Hine as a rebuttal witness for the purpose of rebutting the defendant's testimony that he did not tell the police anything about his whereabouts on the night of the incident. Hine reiterated some of his earlier testimony by stating that the defendant had told him that he had been with his girlfriend, Flores, at the time that the victim was assaulted. Additionally, Hine testified that prior to the time of the interview, the police did not know who Flores was and that in the absence of information provided by the defendant,

they would not have had the ability to contact and to speak with her.[7]

Thereafter, the defendant's counsel notified the court that he wanted to recall the defendant as a surrebuttal witness for the purpose of permitting the defendant to testify about his interview with Hine.[8] The court denied the request, stating that the defendant already had so testified. The court found that the defendant clearly and "emphatically" had testified that he did not give any statement to Hine. The court also reasoned that the proffered evidence did not rebut the testimony elicited during rebuttal because it had admitted only so much of Hine's testimony that related to the fact that he and the other investigators learned Flores' identity from the defendant himself.

Having reviewed the facts relevant to the defendant's claim, we now set forth our standard of review. "Rebuttal evidence is that which is offered to meet new matters raised in [a defendant's case], to contradict prior testimony and to impeach or rehabilitate witnesses . . . . Surrebuttal evidence is that which is offered to meet evidence raised in rebuttal. [O]nly evidence to explain away new facts brought forward by the proponent in rebuttal . . . is properly admissible [in surrebuttal]. . . . [Our Supreme Court has] previously stated that

---

[7] The court subsequently ordered that other portions of Hine's rebuttal testimony be stricken.

[8] After the court inquired as to the defendant's proffered testimony and specifically as to whether he already had testified on the subject of what he told Hine during his interview, the defendant's counsel classified his client's testimony and argued: "I think what [the defendant] was stating is that he didn't say anything specifically about the assault. It doesn't mean that he didn't give ancillary information regarding his girlfriend or . . . where he worked or . . . where he was. Um, where—you know, whether [his landlord] had seen him that night. Uh, I don't think he makes mention of that, and I'd like the opportunity to allow him to testify, hey, you know, I said this or I didn't say this, I disagree with the detective is basically what I'm asking."

there is no constitutional right to present surrebuttal evidence. . . . The presentation of surrebuttal evidence is a matter resting squarely within the discretion of the trial court. . . . The defendant must demonstrate some compelling circumstance and the proffered evidence must be of such importance that its omission puts in doubt the achievement of a just result." (Citations omitted; internal quotation marks omitted.) *State* v. *Turner*, 252 Conn. 714, 723–24, 751 A.2d 372 (2000).

In the present case, the only evidence adduced by the state during rebuttal was Hine's testimony that the defendant's statements to the police during the April 13, 1999 interview provided the only basis on which they learned of Flores' identity. The court permitted the prosecutor to elicit that testimony to contradict, or to rebut, the defendant's testimony that he did not say anything to police when they interviewed him. The record reflects that the prosecutor cross-examined the defendant about what transpired during the interview and, specifically, whether Hine's testimony about what occurred was accurate. The defendant's attorney had a full opportunity, during redirect examination, either to rehabilitate the defendant's credibility or to clarify the defendant's prior testimony, if he so desired.

Under the principles previously set forth, the defendant was permitted, by means of surrebuttal, only to explain away new facts set forth by the state in its rebuttal. His proffered evidence did not satisfy that standard; he did not seek to contradict or to rebut the fact that absent his statement, police investigators would not have known Flores' identity. The defendant does not point to anything in his proffered evidence that would have refuted the fact elicited by the state's rebuttal testimony. Instead, the defendant sought to testify as to what transpired during his interview with Hine, a topic that was well covered in his earlier testi-

mony, and, apparently, to strengthen the credibility of that testimony.

"Bolstering of defense evidence is not permitted on surrebuttal." Id., 724. The proffered testimony would not rebut or refute evidence elicited by the state on redirect. Instead, it appears that the defendant offered his testimony merely to rehabilitate or to clarify his prior testimony because he disagreed with Hine's testimony. See footnote 8. For those reasons, we conclude that the court properly exercised its discretion when it declined to admit such testimony on surrebuttal. Likewise, we conclude that the defendant has not demonstrated that compelling circumstances existed for the admission of his proffered testimony or that the omission of such evidence casts doubt on the propriety of the court's judgment.

The judgment is affirmed.

In this opinion the other judges concurred.