# STATE OF CONNECTICUT *v.* MATTHEW ABRAHAM (AC 23690)

Dranginis, West and DiPentima, Js.

Argued April 30—officially released August 17, 2004

*Lisa J. Steele*, special public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Elpedio N. Vitale*, former senior assistant state's attorney, for the appellee (state).

*Opinion*

DRANGINIS, J. The defendant, Matthew Abraham, appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a and criminal possession of a pistol or revolver in violation of General Statutes § 53a-217c. On appeal, the defendant claims that the court improperly (1) denied his motion for a mistrial and (2) instructed the jury on the combat by agreement exception to self-defense. We disagree and, accordingly, affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On March 28, 2001, Marquis Bailey and several of his friends assaulted the victim, Marcelino Rivera. Bailey took the victim's cellular telephone. The victim attempted to retrieve the telephone from Bailey by telling him that "he just wanted to end it." Bailey taunted the victim by using the cellular telephone in front of him and attempted to leave in a taxi. The victim opened the door of the taxi and kicked Bailey in the face. A scuffle ensued. The taxi driver interceded and separated

the two men. When the taxi drove away, Bailey still possessed the victim's cellular telephone.

The following day, the victim and some of his friends drove to the area of Chapel Park in New Haven. The victim called Bailey, asking him to return his cellular telephone. Bailey responded that the victim had to "give him some money" to get his telephone. The victim told Bailey that he was "gonna get savaged if [he did not] give the phone back," or, in other words, he was going to "beat up" Bailey. The victim's friend, Luis Segarra, told Bailey to "come to the park" and "give up the phone." The defendant was with Bailey when Bailey received Segarra's cellular telephone call and he was aware of the nature of the conversation.

Bailey, the defendant and three other men went to the park. Before arriving at the park, they stopped at a residence on Houston Street where the defendant, who was aware of the previous physical altercations between the victim and Bailey, retrieved a gun from the garage. At the park, the victim asked Bailey for his cellular telephone, but Bailey responded that he would have to pay for its return. A scuffle ensued between Bailey and Segarra. The victim intervened with a metal baseball bat, which he had hidden against the rear bumper of Segarra's car. The victim swung the bat at Bailey, hitting him on either the upper portion of his body or his head. The defendant pulled out the gun and fired one shot at the victim. The victim dropped the bat and began to run. The defendant fired a second shot which struck the victim and severed an artery in his lung. The victim bled to death at the scene.

The police arrested the defendant on unrelated charges. He subsequently gave a statement to the police admitting his involvement in the victim's death. After the jury returned a guilty verdict, the court sentenced the defendant to a total effective term of forty years

imprisonment, execution suspended after thirty years, followed by five years probation.[1] This appeal followed.

I

The defendant first claims that the court improperly denied his motion for a mistrial. We disagree.

The following additional facts are pertinent to the resolution of the defendant's claim. During the fourth day of the trial, the courtroom clerk reported to the court that one of the jurors, F,[2] informed her that three people who had been sitting on the defendant's side of the courtroom had approached him, and one of them had attempted to question F about the case. Shortly thereafter, the court summoned F to inquire about the incident. F testified that while he was smoking a cigarette in front of the courthouse, he observed three people: Juan Diaz, a witness for the defense, a female and a black male. He stated that the black male approached him and asked him "what case [he] was on." He replied that he could not discuss it. The black male then said that "[i]t's tough to have you put somebody else's life in your hands, huh?" F stated that he got up and returned to the courthouse. He further stated that he told two jurors, C and M, about the incident outside of the courthouse. The court asked F whether the incident would influence his ability to serve as a juror. F responded that it would. The court subsequently excused F from the case.

The court continued its inquiry by summoning and questioning each of the jurors individually. C and M each stated that F had told them about an encounter he had with someone outside of the courthouse. Each

[1] The defendant's sentence with respect to his conviction of manslaughter in the first degree with a firearm was enhanced pursuant to General Statutes § 53-202k.

[2] We refer to the jurors by initials to protect their legitimate privacy interests.

of them stated that they could erase the incident from their minds and continue to serve as jurors. The other jurors stated that they had heard rumors that F had been approached by someone, but they were unclear as to the details of the incident. Upon inquiry by the court, each juror indicated that he or she could remain fair and impartial in deciding the case. The defendant subsequently moved for a mistrial, which the court denied.

"In [its] review of the denial of a motion for mistrial, [our Supreme Court has] recognized the broad discretion that is vested in the trial court to decide whether an occurrence at trial has so prejudiced a party that he or she can no longer receive a fair trial. The decision of the trial court is therefore reversible on appeal only if there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Anderson*, 255 Conn. 425, 435, 773 A.2d 287 (2001).

Despite each juror's personal assurances to the court that he or she could remain impartial, the defendant argues that the jurors subconsciously could have disregarded Diaz' testimony, not because of its contents, but rather because of the impact of Diaz' improper conduct outside the courthouse. The defendant further argues that the state has the burden of proving that it was harmless beyond a reasonable doubt for the court not to excuse the jurors who had knowledge of F's encounter with Diaz.[3] We are not persuaded.

"Jury impartiality is a core requirement of the right to trial by jury guaranteed by the constitution of Connecticut, article first, § 8, and by the sixth amendment to the United States constitution. . . . [T]he right to jury trial guarantees to the criminally accused a fair

[3] Because we conclude that the court did not abuse its discretion in denying the defendant's motion for a mistrial, we need not reach the defendant's argument that the state must prove that the court's error was harmless.

trial by a panel of impartial, indifferent jurors. . . . The modern jury is regarded as an institution in our justice system that determines the case solely on the basis of the evidence and arguments given [it] in the adversary arena after proper instructions on the law by the court. . . . Consideration [by the jury] of extrinsic evidence is presumptively prejudicial because it implicates the defendant's constitutional right to a fair trial before an impartial jury. . . .

"It is well established, however, that not every incident of juror misconduct requires a new trial. . . . [D]ue process seeks to assure a defendant a fair trial, not a perfect one. . . . [T]he constitution does not require a new trial every time a juror has been placed in a potentially compromising situation . . . [because] it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. . . . The question is whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial. . . . The defendant has been prejudiced if the misbehavior is such to make it probable that the juror's mind was influenced by it so as to render him or her an unfair and prejudicial juror. . . . Ultimately, however, [t]o succeed on a claim of [juror] bias the defendant must raise his contention of bias from the realm of speculation to the realm of fact." (Citations omitted; internal quotation marks omitted.) *State* v. *Anderson,* supra, 255 Conn. 435–36.

Applying those well settled legal principles to the present case, we conclude that the court did not abuse its discretion in finding that the defendant had not sustained his burden of proving that the incident outside the courthouse resulted in prejudice. See *State* v. *Feliciano,* 256 Conn. 429, 449, 778 A.2d 812 (2001) (defendant bears burden of proving that misconduct occurred and resulted in actual prejudice). The court conducted a thorough examination of each juror individually to

determine the effect that F's encounter with Diaz had on each juror's impartiality. In doing so, the court fulfilled its duty to ensure that the defendant received a fair and impartial trial and was shielded from any negative impact from the incident. See *State* v. *Walker*, 80 Conn. App. 542, 559–60, 835 A.2d 1058 (2003) (court conducted timely and thorough inquiry of jurors to determine whether each juror could base his or her decision on evidence and law), cert. denied, 268 Conn. 902, 845 A.2d 406 (2004). Accordingly, the court did not abuse its discretion in denying the defendant's motion for a mistrial.

## II

The defendant next claims that the court improperly instructed the jury by giving a charge on the combat by agreement exception to self-defense. Specifically, the defendant argues that the court's instructions violated his state and federal constitutional rights to a fair trial and to present a defense because the instructions incorrectly recited the law and potentially confused or misled the jury. The defendant also claims that the instructions violated his state constitutional right to carry arms. We disagree.

The court gave verbatim the defendant's request to charge on self-defense but added a charge on the combat by agreement exception to self-defense. The court instructed the jury as follows: "[T]he defendant is not justified using deadly physical force in defense of [Bailey] if his use of such force is a product of combat by agreement engaged in between [Bailey] and [the victim]. And further that the defendant knows of such agreement. Under this exception, it is not necessary that there be a formal agreement to combat. Such an agreement may be inferred, if warranted, in accordance with the rule on circumstantial evidence I have already explained to you. In that regard too you should consider

all of these circumstances leading up to, during and after the alleged shooting. This exception would not apply despite an agreement for mutual combat if you further found that its terms were violated by [the victim] and that his conduct toward [Bailey] was in violation of their agreement, and further that the defendant knew of such violation. Violation means that [the victim's] use of force exceeded the terms of his agreement with [Bailey], and that it escalated beyond what had been agreed to as to either the extent or form of combat. If you find proven beyond a reasonable doubt that [Bailey] was engaged in combat by agreement with [the victim], and the defendant's use of deadly force in defense of [Bailey] was the result of such agreement, and that the defendant knew of such agreement, you should find that the defendant was not justified in using deadly physical force in defense of [Bailey]. I remind you that the state does not have to prove all three of these factual circumstances or exceptions to the use of deadly physical force. If you find any one proven, it defeats the defense of justification. As I said earlier, the issue of self-defense applies to all of the charges just covered in the first count, including the lesser included offenses, but it does not apply to the second count at all. You will consider the second count regardless of what your verdict is on the first count." The defendant did not object to the court's instruction on the combat by agreement exception to self-defense. He now seeks review of this unpreserved claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[4]

---

[4] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

"A charge to the jury is not to be critically dissected for possible inaccuracies. It should be tested instead to determine its probable effect on the jury in guiding it to the correct verdict. . . . As long as the instructions are correct in law, adapted to the issues and sufficient for the guidance of the jury, they are proper." (Citation omitted.) *State* v. *Crudup*, 81 Conn. App. 248, 257–58, 838 A.2d 1053, cert. denied, 268 Conn. 913, 845 A.2d 415 (2004).

## A

The defendant contends that the court's charge implied that if Bailey and the victim had agreed to a fistfight, that anyone who intervened to prevent one of the combatants from being injured or killed would not be able to claim defense of a third party. The defendant further contends that because there was no evidence that he was a participant in the combat between the victim and Bailey, the court's charge misled and confused the jury on the interaction between the doctrines of combat by agreement and defense of a third party. We are not persuaded.

Having reviewed the charge in its entirety, we conclude that the court's instructions were not misleading to the jury. The court had ample evidence before it to charge the jury on the combat by agreement exception to self-defense. The defendant, contrary to his claim, was not just a witness or bystander to the fight between the victim and Bailey before he intervened and shot the victim. The defendant was aware of the previous physical altercations between the victim and Bailey because the defendant was in the car with Bailey when Segarra called Bailey and asked to meet Bailey at the park. With that knowledge and in contemplation of meeting with the victim, who had indicated that he intended to "savage" Bailey, the defendant stopped at a residence on Houston Street where he armed himself.

Under those circumstances, the court's instructions were correct in law, adapted to the issues and sufficiently guided the jury on the combat by agreement exception to self-defense. Accordingly, we conclude that the defendant's claim fails to satisfy the third prong of *Golding* because it fails to establish that a constitutional violation clearly existed and clearly deprived him of a fair trial.

B

The defendant also claims that the court's instruction violated his state constitutional right to carry a firearm for his defense pursuant to article first, § 15, of the constitution of Connecticut. Specifically, the defendant argues that the state constitution recognizes the right to use said "arms" in self-defense and in lawful defense of others. We disagree.

Article first, § 15, of the constitution of Connecticut provides: "Every citizen has a right to bear arms in defense of himself and the state." Our courts have long recognized that the right to bear arms in self-defense or in defense of the state is subject to reasonable regulation. See *Benjamin* v. *Bailey*, 234 Conn. 455, 467, 662 A.2d 1226 (1995); *State* v. *Bailey*, 209 Conn. 322, 346, 551 A.2d 1206 (1988); see also, *State* v. *Banta*, 15 Conn. App. 161, 184, 544 A.2d 1226, cert. denied, 209 Conn. 815, 550 A.2d 1086 (1988). In enacting General Statutes § 53a-19, our legislature defined the circumstances under which a person is justified in using physical force in self-defense or in defense of others.

Here, the court did not abuse its discretion in instructing the jury that the defendant was not justified in using deadly physical force in defense of Bailey if it found that the state had proven beyond a reasonable doubt that the defendant had engaged in combat by agreement. We conclude that the court's instructions did not violate article first, § 15, of the constitution of

Connecticut. Accordingly, the defendant's claim must fail.

## C

The defendant finally argues that "[u]nder the common law, the fact that a defendant arms himself after an altercation with an aggressor is consistent with self-defense."[5] The defendant asserts that he should receive similar protection under that legal principle. The defendant's argument is without merit and warrants little discussion.

The defendant proposes that a defendant who arms himself after a friend has had an altercation with an armed aggressor should be afforded the justification of defense of others. The defendant cites no legal authority, nor are we aware of any, that supports that proposition. "Assignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court." (Internal quotation marks omitted.) *Fitzgerald* v. *Fitzgerald*, 16 Conn. App. 548, 554, 547 A.2d 1387, cert. denied, 210 Conn. 802, 553 A.2d 615 (1988). Accordingly, the defendant's claim must fail.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[5] In support of his argument, the defendant cites to 1 J. Bishop, Criminal Law (9th Ed. 1923) § 845, p. 601.