******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* STEPHANIE
ANDERSON
(AC 36245)

DiPentima, C. J., and Gruendel and Keller, Js.

*Argued January 4—officially released March 15, 2016*

(Appeal from Superior Court, judicial district of
Hartford, geographical area number fourteen,
McWeeny, J. [judgment]; Bentivegna, J. [motion for
mistrial].)

*Gwendolyn S. Bishop*, assigned counsel, for the
appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney,
with whom, on the brief, were *Gail P. Hardy*, state's
attorney, and *Robert Diaz*, senior assistant state's attor-
ney, for the appellee (state).

*Opinion*

KELLER, J. The defendant, Stephanie Anderson, appeals from the judgment of conviction, rendered following a jury trial, of one count of operating a motor vehicle while under the influence of alcohol in violation of General Statutes § 14-227a (1), and one count of operating a motor vehicle while her operator's license was under suspension in violation of General Statutes § 14-215 (c). Additionally, the defendant pleaded guilty under a part B information to being a third time offender pursuant to General Statutes § 14-227a (g) (3). On appeal, the defendant claims that the trial court, *Bentivegna, J.*, erred when it denied her motion for a mistrial, which was based on a communication that occurred during the trial between the defendant's daughter and a juror. We affirm the judgment of conviction.

The following facts and procedural history are relevant to this appeal. On March 13, 2012, a Hartford police officer arrested the defendant, who was charged with driving while under the influence of alcohol and operating a motor vehicle while her license was under suspension. The defendant pleaded not guilty and elected to be tried by a jury. The defendant was tried by a jury before the court, *McWeeny, J.*, on April 25, 2013. At the conclusion of the trial, the jury returned a verdict of guilty on both counts. Also, the defendant pleaded guilty, under a part B information, to being a third time offender under § 14-227a (g) (3).

On June 10, 2013, Judge McWeeny sentenced the defendant and, at the time of sentencing, delayed execution of the sentence. On July 29, 2013, Judge Bentivegna[1] lifted the stay and clarified the sentence imposed. The defendant was sentenced to a total effective term of three years incarceration, suspended after one year of mandatory incarceration, followed by three years of probation.

The defendant filed a motion for a mistrial on July 26, 2013. In the motion, the defendant represented that she was deprived of a fair trial because one of the jurors had interacted with her daughter during a lunch recess at trial. Specifically, the defendant alleged that she had been deprived of a fair trial because that interaction made it probable that the juror became biased, given that the juror knew who her daughter was, her daughter smelled of alcohol, and one of the charges against her pertained to her alleged intoxication by means of alcohol.

On August 19, 2013, Judge Bentivegna held an evidentiary hearing on the defendant's motion. At the hearing, the defendant presented the testimony of her daughter, her son, and D,[2] the juror with whom the defendant's daughter allegedly had interacted during the trial. The state did not call any witnesses at the hearing, but both the state and the defendant presented oral arguments.

According to the testimony of the defendant's three witnesses at the hearing, the defendant's daughter— who was an observer in the courtroom at the trial and who was eighteen years of age at the time—approached D during the lunch recess while she was standing with another juror outside of the courthouse. The witnesses testified that the defendant's daughter asked D if she could borrow her cell phone and D allowed her to do so. According to the witnesses' testimony, after the defendant's daughter completed her phone call, she thanked D and gave her the phone.[3] The defendant's son testified that he and the defendant were able to observe the defendant's daughter interacting with D outside of the courthouse and that the defendant became "mad" because she knew that D was a juror. The defendant's daughter testified that although she knew at the time of the interaction that D was a juror in her mother's trial, she did not talk about the case at all with D. D also testified that she did not talk about the case with anyone, including the defendant's daughter, during the recess.

According to the testimony of the defendant's daughter and the defendant's son, the defendant's daughter had been drinking alcohol on the night before her interaction with D. The defendant's daughter also testified that she "probably" smelled of alcohol "a little bit" when she interacted with D, but that although, in her own estimate, she had been close enough to D so that she could have smelled alcohol, the entire encounter was "really fast" and D had not made any comments about her smelling of alcohol. D testified that the defendant's daughter neither seemed intoxicated nor smelled of alcohol during their interaction. She also testified that she did not notice that the defendant's daughter had been sitting in the courtroom during the course of the trial, but only had observed her in the courtroom after the conclusion of the trial. Furthermore, when asked if she knew that the young woman who had asked her to borrow her cell phone was the defendant's daughter, D testified that she neither knew that the defendant had a daughter, nor knew that the young woman was related to the defendant in any way.

At the conclusion of the hearing, the court made the following factual findings: "As to whether the proof that the incident occurred, I think—the evidence reflects that there was a contact between the defendant's daughter . . . and the juror, [D].

"And . . . I think that it's clear that [the daughter] approached [D] and asked [D] to borrow her cell phone and that [D] allowed [the daughter] to use the cell phone to make a call.

"I think that the evidence reflects that that whole . . . incident probably . . . wasn't . . . very long . . . . And the record reflects [the daughter's] testimony is that they—and—[D's] testimony was that they

didn't talk about the case.

"They didn't talk about anything relating [to] the jury . . . or the jury deliberations. And then, there is some dispute about whether or not [D] asked [the daughter] to borrow [the daughter's] lighter.

"That [the daughter] says yes. . . . [The son] said, yes. [D] said no. She had her own lighter. But, even if . . . it was true, assume, for the sake that it was true, that [the daughter] loaned . . . [D] the lighter, there was still no discussion of the jury trial.

"There's no indication that there was any discussion of the case. . . . I think that those are the facts that relate to the first element [of juror misconduct], you know, proof that an incident occurred.

"The second element is proof that the misconduct resulted in actual prejudice or bias. And there has not been really any evidence that demonstrates that . . . [D] was—that this contact that . . . [D] had with the defendant's daughter, in any way rose to that level. So, this really was a limited conversation in front of the courthouse. . . .

"There was no discussion of the trial. There was no discussion of a jury's deliberation. I think that . . . [D's] testimony was credible in terms of her testimony. And as I indicated, there was really no proof that this incident had any effect or influence on . . . [D's] ability to be [a] fair and impartial juror.

"There was no indication that . . . [D] shared anything regarding the encounter with any other member of the . . . jury. There's no indication that . . . [D] said to another juror that she had this encounter with [the daughter] and [the daughter] smelled of alcohol.

"I mean, there was no proof of that. There was really no evidence adduced at trial—at the hearing that the defendant has been prejudiced in any way by . . . [D's] conduct. And the evidence failed to show that . . . [D's] misconduct was such as [to] make [it] probable that . . . [D's] mind was influenced by it so as to render . . . [her] an unfair and prejudicial juror. So, the court's going to find that the defense failed to prove any actual prejudice or bias."

Accordingly, the court denied the defendant's motion from the bench. This appeal followed.

On appeal, the defendant claims that the court abused its discretion in denying her motion for a mistrial because it improperly required her to prove that the interaction between her daughter and D subjected her right to a fair trial to "actual prejudice" instead of "probable prejudice." In opposition, the state argues that the court held the defendant to the correct burden of proof on her motion.[4] Alternatively, the state argues that even assuming that the court imposed an improper burden of proof upon the defendant, "the absence of any evi-

dence of an effect on [D] establishes that the defendant could not prevail under any standard." We agree with the state that the defendant could not prevail under the correct legal standard and, thus, we conclude that the court did not abuse its discretion in denying her motion for a mistrial.

We begin our analysis by setting forth the appropriate standard of review. "The decision as to whether to grant a motion for a mistrial . . . is one that requires the trial court to exercise its judicial discretion. . . . Our review of the trial court's exercise of its discretion is limited to questions of whether the court correctly applied the law and could reasonably have concluded as it did. . . . Every reasonable presumption will be given in favor of the trial court's ruling. . . . It is only when an abuse of discretion is manifest or where an injustice appears to have been done that a reversal will result from the trial court's exercise of discretion. . . .

"[Although] the remedy of a mistrial is permitted under the rules of practice, it is not favored. . . . If curative action can obviate the prejudice, the drastic remedy of a mistrial should be avoided. . . . The general rule in Connecticut is that a mistrial is granted only where it is apparent to the court that as a result of some occurrence during trial a party has been denied the opportunity for a fair trial. . . . The trial court enjoys wide discretion in deciding whether a mistrial is warranted . . . and its evaluation as to events occurring before the jury is to be accorded the highest deference. . . . Every reasonable presumption will be given in favor of the trial court's ruling . . . because the trial court, which has a firsthand impression of the jury, is in the best position to evaluate the critical question of whether the juror's or jurors' exposure has prejudiced a defendant. . . . [W]e examine the court's exercise of discretion to determine whether it correctly applied the law and reasonably could have concluded as it did in denying the motion for a mistrial." (Citations omitted; internal quotation marks omitted.) *State* v. *Boykin*, 74 Conn. App. 679, 685–87, 813 A.2d 143, cert. denied, 263 Conn. 901, 819 A.2d 837 (2003).[5]

Before the trial court and this court, the defendant consistently characterized the interaction between her daughter and D as "juror misconduct." Thus, we turn to fundamental principles that govern claims of juror misconduct. "Jury impartiality is a core requirement of the right to trial by jury guaranteed by the constitution of Connecticut, article first, § 8, and by the sixth amendment to the United States constitution. . . . It is well established, however, that not every incident of juror misconduct requires a new trial. . . . [T]he constitution does not require a new trial every time a juror has been placed in a potentially compromising situation . . . [because] it is virtually impossible to shield jurors from every contact or influence that might theoretically

affect their vote." (Citations omitted; internal quotation marks omitted.) *State* v. *Anderson*, 255 Conn. 425, 435–36, 773 A.2d 287 (2001). "[It] bears mentioning that the opportunity for a juror to commit misconduct is a far cry from a juror who actually does commit misconduct. Theoretically, every juror in every trial always has the potential to take some action that could prejudice the defendant's right to a fair trial. The vast majority of those called to jury service, however, approach their duty seriously and abide by their oaths as jurors." *State* v. *Roman*, 320 Conn. 400, 410–11, A.3d (2016).

A defendant who claims that juror misconduct deprived him of his right to a fair trial, must prove that the alleged misconduct, in fact, occurred. The *nature* of the misconduct then determines whether the defendant thereafter bears the burden of proving that it actually prejudiced his right to a fair trial *or* whether such prejudice is presumed as a matter of law, thus shifting the burden to the state to prove that the misconduct was harmless. In situations in which "the trial court is directly implicated in juror misconduct, the state bears the burden of proving that misconduct was harmless error." (Internal quotation marks omitted.) *State* v. *Rhodes*, 248 Conn. 39, 47, 726 A.2d 513 (1999). Additionally, in a recent decision, *State* v. *Berrios*, 320 Conn. 265, 292, A.3d (2016), our Supreme Court explained that a presumption of prejudice is triggered once it is proven that there existed "external interference with the jury's deliberative process via private communication, contact, or tampering with jurors that relates directly to the matter being tried." (Footnote omitted.) In cases of this nature, "the burden properly rests on the state for several reasons: the overarching importance of protecting the defendant's constitutional right to a fair trial, the continuing maintenance of the integrity of the jury system and the necessity of continuing to preserve the trust reposed in criminal jury verdicts." (Internal quotation marks omitted.) Id., 293. Nonetheless, "the burden remains on the defendant to show prima facie entitlement to the . . . presumption [of prejudice]; evidence, rather than speculation, is required to shift the burden of proof to the state." Id.

Thus, unless a defendant can prove, rather than merely speculate, that the court was directly implicated in juror misconduct or that there was "external interference with the jury's deliberative process via private communication, contact, or tampering with jurors that relates directly to the matter being tried"; (footnote omitted) id., 292; a defendant cannot demonstrate an entitlement to a presumption of prejudice, but "bears the burden of demonstrating prejudice" as a result of the alleged misconduct. *State* v. *Roman*, supra, 320 Conn. 409.

With respect to a defendant's burden of proving that juror misconduct was prejudicial, our Supreme Court

has stated: "It is well established . . . that not every incident of juror misconduct requires a new trial. . . . [D]ue process seeks to assure a defendant a fair trial, not a perfect one. . . . [T]he constitution does not require a new trial every time a juror has been placed in a potentially compromising situation . . . [because] it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. . . . The question is whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial. . . . The defendant has been prejudiced if the misbehavior is such to make it probable that the juror's mind was influenced by it so as to render him or her an unfair and prejudicial juror." (Citations omitted; internal quotation marks omitted.) *State* v. *Rhodes*, supra, 248 Conn. 47; see also *State* v. *Anderson*, supra, 255 Conn. 436 (proper inquiry is whether misbehavior was of such nature as to make it probable that juror's mind was influenced); *State* v. *Newsome*, 238 Conn. 588, 628, 682 A.2d 972 (1996) (same). "Ultimately . . . [t]o succeed on a claim of [juror] bias the defendant must raise his contention of bias from the realm of speculation to the realm of fact." (Internal quotation marks omitted.) *State* v. *Anderson*, supra, 436. We observe that, in accordance with "the well settled limitation on inquiring into the mental processes of jurors"; *State* v. *Johnson*, 288 Conn. 236, 261, 951 A.2d 1257 (2008); this inquiry does not involve an inquiry concerning the *actual* effect of any misconduct upon one or more jurors.

In the present case, the defendant did not argue before the trial court that she did not bear the burden of demonstrating that she had been prejudiced by the alleged juror misconduct, and she does not so argue before this court. Despite the fact that the defendant does not dispute that she bore the burden of proof on her motion for a mistrial, she claims that the court held her to an improper burden of proof based upon its statements at the conclusion of the hearing that "[t]he second element [of a juror misconduct claim] is proof that the misconduct resulted in actual prejudice or bias," that "[t]here was really no evidence adduced . . . at the hearing that the defendant [had] been prejudiced in any way by [D's] conduct," and that "the court's going to find that the defense failed to prove any actual prejudice or bias." These statements, the defendant claims, reflect that the court, in its assessment of her motion for a mistrial, improperly required her to prove that D actually was biased because of D's interaction with her daughter.

We conclude that the court properly denied the defendant's motion for a mistrial because, as a matter of law, the court's findings of fact establish that the defendant failed to carry her burden of proving that the contact between her daughter and D made it probable that D became biased as a result of it. Although the defendant

characterizes the claim as involving juror misconduct, the defendant did not allege, nor did the court find, that D had violated any of her obligations as a juror simply because she briefly had conversed with the defendant's daughter, whose relationship to the defendant was unknown to her, about matters that were wholly unrelated to the defendant's trial. The defendant has not proven that juror misconduct occurred. Instead, this claim involves third party communication with a juror, which, the defendant argues, probably caused the juror to be biased against her. The defendant did not demonstrate that the court was directly involved in this contact between D and the defendant's daughter or that the contact related directly to the matter being tried. Thus, the defendant did not demonstrate a prima facie entitlement to a presumption of prejudice, but bore the burden of demonstrating prejudice. See *State* v. *Roman*, supra, 320 Conn. 409.

Although the court's oral decision does not clearly set forth the defendant's burden of proof, we nevertheless interpret the decision by considering it in its entirety, rather than by considering certain statements in artificial isolation. See, e.g., *In re Nevaeh W.*, 317 Conn. 723, 733, 120 A.3d 1177 (2015) (reviewing court must read trial court's opinion as whole to discern meaning). Here, the court stated the burden of proof to be imposed on the defendant both accurately and inaccurately. Specifically, it accurately referred to the burden of proof when it stated that "the evidence failed to show that the juror's misconduct was such as [to] make [it] probable that the juror's mind was influenced by it so as to render the juror an unfair and prejudicial juror." See *State* v. *Anderson*, supra, 255 Conn. 436; *State* v. *Rhodes*, supra, 248 Conn. 47; *State* v. *Newsome*, supra, 238 Conn. 628; *State* v. *Abraham*, 84 Conn. App. 551, 556, 854 A.2d 89, cert. denied, 271 Con. 938, 861 A.2d 514 (2004). The court, however, also inaccurately referred to the burden of proof when it stated that "[t]he second element is proof that the misconduct resulted in actual prejudice or bias," that "there was really no proof that this incident had any effect or influence on the juror's ability to be [a] fair and impartial juror," and that "the court's going to find that the defense failed to prove any actual prejudice or bias." Thus, it is unclear whether the court held the defendant to the proper burden of proving whether she was deprived of a fair trial because the contact at issue probably caused D to be an unfair and prejudicial juror.

To the extent that it appears from the court's oral decision that it impermissibly considered whether the alleged misconduct had any effect on D's—or any other juror's—deliberation process or her ability to be impartial, we do not consider such impropriety to warrant reversal as to the defendant's conviction. The court's findings concerning the incident, which are not challenged on appeal, lead us to conclude that the court

did not abuse its discretion in denying the defendant's motion because, as a matter of law, the defendant is unable to prevail under the correct burden of proof.

We may affirm the court's judgment on the ground that, as a matter of law, the court's findings of fact concerning the interaction between D and the defendant's daughter do not establish that the incident probably caused D to be an unfair or impartial juror. "We may affirm a trial court's decision that reaches the right result, albeit for the wrong reason." *State* v. *Albert*, 50 Conn. App. 715, 728, 719 A.2d 1183 (1998), aff'd, 252 Conn. 795, 750 A.2d 1037 (2000). We are mindful that "the opportunity for a juror to commit misconduct is a far cry from a juror who actually does commit misconduct." *State* v. *Roman*, supra, 320 Conn. 410. The court's findings reflect that the interaction between the defendant's daughter and D was brief, that the interaction did not involve any discussion of the case or of the jury trial, and that the interaction was not brought to the attention of any other members of the jury. As we already have observed, the present claim involves third party communication with a juror that was not related to the matter being tried. It does not involve juror misconduct. The court found D's version of events to be credible, which encompassed her testimony that she was unaware of the identity of the defendant's daughter when she interacted with her, that she only learned of her identity after the jury's deliberations had ended, and that the defendant's daughter neither appeared to be intoxicated nor smelled of alcohol. On the basis of this factual record, we conclude that the court properly exercised its discretion in denying the defendant's motion for a mistrial.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Judge Bentivegna stated that Judge McWeeny was unavailable at the time.

[2] We refer to the juror by her initial to protect her legitimate privacy interests. See, e.g., *State* v. *Holley*, 90 Conn. App. 350, 352 n.2, 877 A.2d 872, cert. denied, 275 Conn. 929, 883 A.2d 1249 (2005).

[3] There was some dispute as to whether, at this point, D asked the defendant's daughter if she could borrow her lighter so that she could smoke a cigarette. Specifically, the defendant's daughter and the defendant's son testified that this had occurred, but D testified that this did not occur. The defendant's daughter and son both testified that the defendant's daughter allowed D to borrow her lighter, that D returned it to her after she lit her cigarette, and that the defendant's daughter then walked away from her.

[4] Also, as it did at the hearing on the motion for mistrial, the state, relying on the testimony of the defendant's son, argues on appeal that the defendant waived her claim because despite the fact that she and her son observed her daughter interacting with a person whom she knew to be a juror on April 25, 2013, she apparently chose to not bring all of the details of the encounter to her attorney's attention until after the jury returned its verdict.

When Judge Bentivegna gave her an opportunity to respond to the waiver argument at the hearing, defense counsel represented that on April 25, 2013, when court came back into session after a recess and after the encounter between the daughter and D had taken place, Judge McWeeny admonished the jury to refrain from talking to anyone outside of the jury about the case. Defense counsel represented that shortly after the court's admonishment, the defendant then said to her that Judge McWeeny must have given the warning "because [her] daughter was speaking—the juror was speaking to

[her] daughter." Defense counsel represented that despite the defendant's statement to her, she did not raise the issue of a mistrial at that time because she mistakenly thought that, based upon his admonishment, Judge McWeeny had already been informed of the encounter between the daughter and a juror. Defense counsel submitted that she had not known all of the details of the encounter at that time and that she later learned that Judge McWeeny's admonishment was occasioned by a different incident that had occurred during a recess in which several jurors had overheard the defendant talking on her cell phone outside of the courtroom and had informed the court immediately thereafter. Ultimately, defense counsel stated that there was a miscommunication between herself and her client insofar as she knew neither the reason for Judge McWeeny's admonishment nor all of the details surrounding the interaction between the daughter and one of the jurors on the date that the incident occurred, April 25, 2013. Defense counsel represented that on July 24, 2013, the defendant informed her of the exact nature of the encounter that occurred between her daughter and D and that she filed the motion for a mistrial two days later, on July 26, 2013. Accordingly, defense counsel argued that the defendant had not waived her claim.

After hearing defense counsel's representations on the waiver issue at the hearing on the motion for mistrial, the court, *Bentivegna, J.*, addressed the merits of the defendant's motion and did not make any findings as to whether the defendant had waived her claim. The record does not contain any factual findings related to the undisputed representations of defense counsel as to when she became aware of all of the details surrounding the encounter between D and the defendant's daughter. Accordingly, the record does not permit us to revisit the waiver issue.

[5] We recognize that, generally, the judge who is asked to consider and rule on a motion for a mistrial is the same judge who presided over the trial itself. As discussed previously in this opinion, however, that did not occur in the present case. Although, in the present case, Judge Bentivegna did not have a firsthand impression of the jury, that fact does not cause us to review his ruling on the motion for a mistrial with any less deference than if he had presided over the trial. In the present case, the motion for a mistrial was based on an occurrence that involved only one juror, D. Judge Bentivegna had a firsthand opportunity to evaluate D during the proceeding related to the motion for a mistrial and, thereby, to evaluate the probable effect of her exposure to the defendant's daughter.